O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY JAFFE, an individual | Case No. 2:17-cv-03421-ODW (Ex) |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS AND DENYING AS MOOT MOTION TO STRIKE [12]** |
| SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., an Illinois corporation; and DOES 1-50; inclusive, | |
| Defendants, | |

# I.   INTRODUCTION

Plaintiff Timothy Jaffe asserts eight causes of action against his former employer, Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick"), all arising from events that occurred during Jaffe's medical leave of absence.  (Compl. ¶¶ 2–17, ECF No. 1-2.)  Jaffe alleges that Sedgwick failed either to engage in the interactive process or to accommodate his disability, and that a Sedgwick claims examiner falsely informed Jaffe that she had contacted his doctor in connection with the denial of his disability claim.  (*Id.*)  Consequently, Jaffe contends that he was left with no other alternative than to resign.  (*Id.*)

Sedgwick now moves to dismiss claims one, two, five, six, seven, and eight pursuant to Federal Rule of Civil Procedure 12(b)(6) and moves to strike from the complaint all references to termination and constructive termination.  (Mot. 1, 12, ECF No. 12.)  For the reasons discussed below, the Court **GRANTS** Sedgwick's Motion to Dismiss in its entirety and **DENIES AS MOOT** Sedgwick's Motion to Strike.[1]

# II.   FACTUAL BACKGROUND

Jaffe started working at Sedgwick in 1996.  (Compl. ¶ 7.)  Due to complications from job-related stress and depression, Jaffe took leave under the Family and Medical Leave Act from January 13, 2015, until approximately March 24, 2015.  (*Id.* ¶¶ 8–11.)  During this time, Jaffe alleges that he requested disability benefits from Sedgwick, and that a Sedgwick claims examiner falsely informed him that she had contacted his doctor and found insufficient evidence to support his disability claim.  (*Id.* ¶¶ 12–14.)  Consequently, Jaffe was unable to receive full state disability insurance.  (*Id.*)

In February 2015, subsequent to the denial of his disability benefits (and while on disability leave), Jaffe alleges that he provided Sedgwick with a note stating that he "was currently unable [to] return to his prior position due to his health."  (*Id.* ¶ 13.)

---

[1] After considering the papers filed in connection with the Motions, the Court deemed them appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

1   According to Jaffe, his supervisor responded that Sedgwick did "not have a different
2   position for him after he returned from FMLA leave." (*Id.*)

3        Jaffe alleges that Sedgwick failed to engage in a good faith interactive process
4   because Sedgwick never contacted him "to see if there was some reasonable
5   accommodation that could have assisted [Jaffe] to perform the essential functions of
6   his positon." (*Id.* ¶¶ 15–16.) Jaffe alleges that the fraudulent statements made by the
7   Sedgwick claims examiner in connection with the denial of his benefits and
8   Sedgwick's failure to engage in a good faith interactive process left him with no
9   alternative other than to resign. (*Id.* ¶ 16.)

10       On June 12, 2017, Sedgwick moved to dismiss several claims in Jaffe's
11  complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure Rule
12  12(b)(6). (ECF No. 12.) The motion is now before this Court.

13                       **III.   LEGAL STANDARD**

14       A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure
15  12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support
16  an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d
17  696, 699 (9th Cir. 1988). To survive a motion to dismiss, a complaint need only
18  satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain
19  statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The
20  factual allegations "must be enough to raise a right to relief above the speculative
21  level . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the
22  complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to
23  relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

24       The determination of whether a complaint satisfies the plausibility standard is a
25  "context-specific task that requires the reviewing court to draw on its judicial
26  experience and common sense." *Id.* at 679. A court is generally limited to the
27  pleadings and must construe all "factual allegations set forth in the complaint . . . as
28  true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d

668, 679 (9th Cir. 2001).  But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, or unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed, even if not requested by the plaintiff.  *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).  However, a court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.,* 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.   DISCUSSION

Jaffe's complaint advances eight causes of action: (1) retaliation in violation of the Fair Employment and Housing Act, Cal. Gov't Code § 12940 *et seq.* ("FEHA"); (2) disability discrimination in violation of FEHA; (3) failure to accommodate in violation of FEHA; (4) failure to engage in the interactive process in violation of FEHA; (5) failure to prevent discrimination and harassment; (6) interference with and failure to provide leave in violation of the California Family Rights Act ("CFRA"); (7) wrongful constructive termination in violation of FEHA; and (8) wrongful termination in violation of public policy.  (ECF No. 1-2)

Sedgwick moves to dismiss claims one, two, five, six, seven, and eight on the grounds that Jaffe fails to allege facts sufficient to state a plausible claim for constructive discharge, a requirement for these causes of action.  (Mot. 1.)

## A.   Retaliation

Jaffe's first cause of action alleges retaliation by Sedgwick in violation of Subdivision (h) of FEHA.  (Compl. ¶¶ 18–24.)  Sedgwick moves to dismiss Jaffe's retaliation claim on the ground that Jaffe has not alleged facts showing that he was engaged in protected activity or that there was a causal link between any activity, protected or otherwise, and his termination.  (Mot. 8–9; Reply 8–9, ECF No. 15.) Jaffe argues that his complaint sufficiently alleges that he was on protected medical

1    leave when Sedgwick refused to place him in another position as a form of reasonable

2    accommodation, and that shortly thereafter, Sedgwick "lied about communications"

3    with Jaffe's doctor in connection with the denial of his benefits.  (Opp'n 6, ECF No.

4    14.)  Thus, Jaffe contends, he sufficiently pleaded a claim for retaliation.  (*Id.*)

5         Under FEHA, it is unlawful "[f]or any employer . . . or person to discharge,

6    expel, or otherwise discriminate against any person because the person *has opposed*

7    any practices forbidden under this part or because the person has filed a complaint,

8    testified, or assisted in any proceeding under this part."  Cal. Gov't Code § 12940(h)

9    (emphasis added).  To establish a prima facie case of retaliation under FEHA, a

10   plaintiff must plead and prove that: (1) he engaged in a protected activity; (2) the

11   employer subjected him to an adverse employment action; and (3) a causal link

12   existed between his protected activity and the employer's action.  *See Dawson v.*

13   *Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011).

14        Jaffe alleges that his request for an accommodation from Sedgwick was a

15   protected activity.  (Compl. ¶ 20.)   However, a request for accommodation does not

16   constitute protected activity and is insufficient to state a claim for retaliation.  *Nealy v.*

17   *City of Santa Monica*, 234 Cal. App. 4th 359, 381 (2015) (holding that "protected

18   activity does not include a mere request for reasonable accommodation . . . . Without

19   more, exercising one's rights under FEHA to request reasonable accommodation or

20   engage in the interactive process does not demonstrate some degree of opposition to

21   or protest of unlawful conduct by the employer"); *Rope v. Auto-Chlor Sys. of Wash.,*

22   *Inc.*, 220 Cal. App. 4th 635, 652–53 (2013) (holding that there is "no support in the

23   regulations or case law for the proposition that a mere request—or even repeated

24   requests—for an accommodation, without more, constitutes a protected activity

25   sufficient to support a claim for retaliation in violation of FEHA").

26        The Court recognizes that effective January 1, 2016, AB 987 modified FEHA

27   such that requests for accommodation can constitute protected activity.  However, this

28   amendment does not apply retroactively to Jaffe's claim because "California courts

comply with the legal principle that unless there is an 'express retroactivity provision, a statute will *not* be applied retroactively unless it is *very clear* from extrinsic sources that the Legislature . . . must have intended a retroactive application.'"  *Myers v. Philip Morris Cos., Inc.*, 28 Cal. 4th 828, 841 (2002) (citations omitted).  The 2016 amendment to FEHA does not state that it is retroactive, and Jaffe does not point to any sources indicating that the Court should apply it retroactively.  Jaffe's request for accommodation is therefore not a basis on which to state a claim for retaliation.

Further, the Court  is unpersuaded by Jaffe's argument that his disability leave, the alleged misrepresentation in connection with the denial of his disability benefits, and his alleged request for disability benefits are protected activities pursuant to Subdivision (h).  Under FEHA, "protected activity" for purposes of Subdivision (h) requires some level of express opposition to the employer's actions based on the employee's reasonable belief that some act, policy, or practice of the employer is unlawful.  *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028 (2005); *Miller v. Dep't of Corr.*, 36 Cal. 4th 446 (2005); *Fiat v. N. Am. Watch Corp.*, 2 Cal. App. 4th 467 (1992); *Monge v. Superior Court*, 176 Cal. App. 3d 503 (1986).  Jaffe does not allege that he expressly opposed any unlawful act, policy, or practice of Sedgwick. Jaffe merely alleges that he requested an accommodation and took a medical leave of absence, and cites the denial of his disability benefits as the basis for his retaliation claim.  (Compl. ¶ 20; Opp'n 6.)  Were this sufficient, Jaffe's definition of protected activity would conflate retaliation with the failure to accommodate or engage in the interactive process.  *See Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1144 (E.D. Cal. 2010) (holding that failing to restrict adverse employment actions to those in response to employee opposition "would significantly blur and perhaps obliterate the distinction between an action for failure to accommodate or engage in the interactive process and retaliation").  Thus, the Court holds that Jaffe failed to plead facts sufficient to establish a protected activity.

Therefore, the Court **GRANTS** Sedgwick's Motion to Dismiss as to Jaffe's first

1   cause of action with leave to amend.

2   **B.      Constructive Termination in Violation of Public Policy and FEHA**

3        Jaffe's seventh and eight causes of action allege constructive wrongful

4   termination in violation of public policy and FEHA pursuant to California

5   Government Code section 12940(h).  Jaffe bases his constructive discharge allegation

6   on: (1) the intentional misrepresentations about communications with Jaffe's doctor

7   by a Sedgwick claims examiner in connection with the denial of Jaffe's application for

8   disability benefits; and (2) Sedgwick's failure to engage in a good faith interactive

9   process after Jaffe informed his supervisor the he was "unable [to] return to his prior

10  position due to his health."  (Compl. ¶¶ 12–14, 16.)  Jaffe contends that these two

11  issues left him with no reasonable alternative but to resign from his employment.  (*Id.*

12  ¶ 16.)

13       To state a claim for wrongful termination in violation of public policy, a

14  plaintiff must demonstrate that: (1) he was terminated; and (2) his dismissal violated a

15  policy that is fundamental, beneficial for the public, and embodied in a statute or

16  constitutional provision.  *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256

17  (1994).  A constructive discharge may provide the basis for a wrongful termination

18  claim in violation of public policy "when the employer's conduct effectively forces an

19  employee to resign."  *Id.* at 1244.  Similarly, a constructive discharge can form the

20  basis of a wrongful termination claim under FEHA.  *See Steele v. Youthful Offender*

21  *Parole Bd.*, 162 Cal. App. 4th 1241, 1253 (2008).

22       "[T]o establish a constructive discharge, an employee must plead and prove . . .

23  that the employer either intentionally created or knowingly permitted working

24  conditions that were so intolerable or aggravated at the time of the employee's

25  resignation that a reasonable employer would realize that a reasonable person in the

26  employee's position would be compelled to resign."  *Turner*, 7 Cal. 4th at 1251.  "To

27  be 'intolerable' or 'aggravated,' the employee's working conditions must be

28  'sufficiently extraordinary and egregious to overcome the normal motivation of a

7

1  competent, diligent, and reasonable employee to remain on the job to earn a livelihood
2  and to serve his or her employer."'  *Steele*, 162 Cal. App. 4th at 1253 (citations
3  omitted).  Further, the "adverse working conditions must amount to a 'continuous
4  pattern' before the situation will be deemed intolerable." *Turner*, 7 Cal. 4th at 1247.

### 1.   Denial of Disability Benefits

6      A single misrepresentation does not establish a continuous pattern of
7  misconduct, nor is it so intolerable or aggravated that a reasonable employee in Jaffe's
8  position would feel compelled to resign from his means of earning a livelihood.  To
9  the contrary, a reasonable and diligent employee of normal motivation would respond
10  with another viable alternative, such as appealing the denial immediately, rather than
11  feeling compelled to resign months later without contest.  The facts also do not
12  indicate that Sedgwick intentionally created or knowingly permitted working
13  conditions so intolerable that it was foreseeable that a reasonable person would feel
14  compelled to resign.

15      Courts have held far worse conditions insufficient to establish a constructive
16  discharge claim.  *See Rodriguez v. Wells Fargo Bank, Inc.*, No. 2:15–cv–01303–
17  KJM–CMK, 2016 WL 4595064, at *8 (E.D. Cal. Sept. 2, 2016) (holding that a
18  reasonable juror would not be able to find five racially charged jokes spanning a six-
19  month period as "sufficiently extraordinary and egregious"); *Gibson v. Aro Corp.*, 32
20  Cal. App. 4th 1628, 1636 (1995) (holding that the "demotion of an employee or
21  criticism of his job performance—even if alleged to be unfair or outrageous— . . .
22  does not create the intolerable working conditions necessary to support a claim of
23  constructive discharge" (emphasis omitted)); *Turner*, 7 Cal. 4th at 1254 (holding that
24  "the mere existence of illegal conduct in the workplace does not, without more, render
25  employment conditions intolerable to a reasonable employee").

26      Further, a misrepresentation in connection with the denial of Jaffe's application
27  for disability benefits has little to no impact on his actual working conditions at
28  Sedgwick.  At the time of the denial, Jaffe was on disability leave, not performing

work duties, and was not at his place of employment at any point between the occurrence of the alleged misrepresentation and his resignation.  (Compl. ¶¶ 12–14, 16.)  Thus, the denial of benefits came when Jaffe was off work and therefore could not have substantially affected his working conditions.  Moreover, a one-time denial of disability benefits in no way establishes a continuous pattern of employer misconduct required to find the working conditions so intolerable as to support a claim of constructive discharge.

Therefore, the Court holds that the facts as they pertain to the denial of Jaffe's disability benefits are insufficient to establish constructive termination.

### 2.     Failure to Engage in the Interactive Process

The second allegation Jaffe makes to support his claim for constructive termination is that Sedgwick failed to engage in the interactive process and provide him with reasonable accommodations.  (*Id.* ¶¶ 13, 15.)[2]  Jaffe's interactive process claim is confined to two isolated incidents: (1) when he allegedly provided a note to Sedgwick stating that he "was currently unable [to] return to his prior position due to his health," and (2) the alleged reply from Jaffe's supervisor that Sedgwick did not "have a different position for him after he returns from his FMLA leave."   (Compl. ¶ 13.)

Jaffe has not alleged any extraordinary or egregious working conditions that would compel a reasonable person to resign.  Nor has Jaffe alleged any unusually aggravating factor or reasonable inference that the two isolated incidents were motivated by Sedgwick's desire for Jaffe to resign.  Jaffe could have remained on leave while appealing the denial of his disability benefits and continuing a conversation with Sedgwick regarding reasonable accommodations to sustain his employment.  *See Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 950 (1997) ("Reasonable accommodation . . . envisions an exchange between employer

---

[2] Jaffe also separately pleaded a substantive claim for failure to engage in the interactive process. (*Id.* ¶ 15.)

1 and employee where each seeks and shares information to achieve the best match
2 between the employee's capabilities and available positions."). Instead, Jaffe decided
3 to resign. (Compl. ¶ 16.) Accordingly, the Court holds that Sedgwick's failure to
4 engage in the interactive process and denial of disability benefits as alleged in the
5 complaint—whether considered individually or together—are not sufficient to
6 establish intolerable work conditions as a matter of law. Thus, Jaffe has not pleaded
7 facts sufficient to support a claim for constructive termination.

8 Therefore, the Court **GRANTS** Sedgwick's Motion to Dismiss as to Jaffe's
9 seventh and eighth causes of action with leave to amend.

10 **C.     Disability Discrimination and Failure to Prevent Disability Discrimination**

11 Jaffe's second cause of action alleges disability discrimination, and his fifth
12 cause of action alleges failure to prevent disability discrimination, both in violation of
13 FEHA. (Compl. ¶¶ 5, 10.) Jaffe bases both claims on the allegation that Sedgwick
14 violated FEHA "by terminating [him] from his position on the basis of his disability,
15 failing to engage in the interactive process . . . and failing to provide [him] with a
16 reasonable accommodation." (*Id.* ¶ 28.) The Court finds this insufficient.

17 Under FEHA, it is unlawful for an employer "to discriminate against [a] person
18 in compensation or in terms, conditions, or privileges of employment" because of
19 race, gender, or physical disability. Cal. Gov't. Code § 12940(a). A prima facie
20 disability discrimination case requires the plaintiff to show that he: (1) suffered from a
21 disability, or was regarded as suffering from a disability; (2) could perform the
22 essential duties of the job with or without reasonable accommodations; and (3) was
23 subjected to an adverse employment action because of the disability or perceived
24 disability. *Wills v. Superior Court,* 195 Cal. App. 4th 143, 159–60 (2011).

25 An "adverse employment action" must be both substantial and detrimental;
26 conduct that is only minor or trivial is insufficient. *See Horsford v. Bd. of Tr. of Cal.*
27 *State Univ.*, 132 Cal. App. 4th 359, 374 (2005). An "adverse employment action is
28 one that 'materially affect[s] the compensation, terms, conditions, or privileges of . . .

employment.'" *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). Moreover, the plaintiff's disability must have been a "*substantial* motivating factor" in the particular employment decision. *Harris v. City of Santa Monica,* 56 Cal. 4th 203, 232 (2013). The plaintiff can demonstrate an employer's discriminatory motive through direct evidence or by offering "circumstantial evidence of discrimination that tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable." *Achal v. Gate Gourmet, Inc.*, 114 F. Supp. 3d 781, 801 (N.D. Cal. 2015).

As previously discussed, Jaffe fails to allege facts sufficient to support a claim for constructive termination. Thus, Jaffe's alleged constructive termination also does not constitute an adverse employment action for the purposes of a disability discrimination claim.

Further, contrary to Jaffe's arguments, Jaffe did not allege in the Complaint that he requested a transfer to another position or any accommodations. (*See* Opp'n 7; Compl. ¶¶ 13–15.) The complaint clearly alleges that Jaffe provided a note to Sedgwick stating that he "was *currently* unable [to] return to his prior position due to his health" and that Jaffe's supervisor replied that Sedgwick did not "have a *different* position for him after he returns from his FMLA leave." (Compl. ¶ 13 (emphases added).) To construe Jaffe's single informative statement of his *temporary* inability to return to his prior position as an explicit transfer request requiring action on the part of Sedgwick is to flip the goals of each type of communication on their head—one imparts information, the other requests action. Jaffe merely informed Sedgwick of the *temporary* nature of his current situation; he was not requesting that Sedgwick take any action. To make the inference that there is a request embedded in a merely informational statement is thus nonsensical. In every case the Court examined, the plaintiff's transfer request for the purpose of establishing an adverse employment action under FEHA involved an explicit request. *See, e.g.*, *Kortan v. State of Cal.*, 5 F. Supp. 2d 843 (1998); *Akers v. Co. of San Diego*, 95 Cal. App. 4th 14441 (2002).

Therefore, Jaffe has not adequately pleaded facts to show that he requested a transfer from Sedgwick.

Moreover, Jaffe has alleged no facts showing any connection between Sedgwick's conduct and his disability. To state a claim, Jaffe must sufficiently plead that the adverse employment actions taken against him were substantially motivated by disability discrimination. *Harris,* 56 Cal. 4th at 232.

Without alleging additional facts supporting an adverse employment action or the existence of direct or circumstantial evidence of discriminatory motive, Jaffe cannot adequately plead his disability discrimination claim. *Id*. Further, failure to prevent discrimination is a derivative claim predicated solely on Jaffe's allegation of disability discrimination. *See Trujillo v. North Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998) (holding that "[t]here's no logic that say an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, [or] for not having a policy to prevent discrimination when no discrimination occurred"). Thus, Jaffe has not adequately pleaded his fifth cause of action for failure to prevent disability discrimination.

Therefore, the Court **GRANTS** Sedgwick's Motion to Dismiss as to Jaffe's second and fifth causes of action with leave to amend.

**D.    Violation of CFRA**

Jaffe's sixth cause of action alleges that Sedgwick interfered with and failed to provide leave in violation of CFRA when (1) Sedgwick terminated Jaffe in retaliation for exercising his right to protected medical leave; and (2) he was denied benefits in connection with Sedgwick's alleged misrepresentation. (Compl. ¶¶ 59–60; Opp'n 7–8.) Jaffe contends that both these actions were discriminatory and retaliatory in nature and that Sedgwick "effectively terminated his employment when [Sedgwick] denied [Jaffe] the right to return to work with accommodation." (Opp'n 8.)

"[C]ourts have distinguished between two theories of recovery under the CFRA and the FMLA. 'Interference' claims prevent employers from wrongly interfering

with employees' approved leaves of absence, and 'retaliation' or 'discrimination' claims prevent employers from terminating or otherwise taking action against employees because they exercise those rights." *Richey v. AutoNation, Inc.*, 60 Cal. 4th 909, 920 (2015).

To plead a cause of action for interference under CFRA, a plaintiff must plead facts establishing that: (1) he was entitled to CFRA leave, and (2) the employer interfered with or denied those rights. *Id.* at 250. To establish a cause of action for retaliation under CRFA, a plaintiff must plead facts establishing that: (1) the defendant was an employer covered by CFRA; (2) the plaintiff was an employee eligible to take CFRA leave; (3) the plaintiff exercised his right to take leave for a qualifying CFRA purpose; and (4) the plaintiff suffered an adverse employment action, such as a termination, fine, or suspension, because of his exercise of his right to CFRA leave. *Moore v. Regents of the Univ. of Cal.*, 248 Cal. App. 4th 216, 248 (2016).

First, there is insufficient factual support for the allegation that Sedgwick retaliated against Jaffe for exercising his right to protected medical leave. As discussed, the Court has determined that Jaffe has not pleaded facts sufficient to support a claim of constructive termination, discrimination, or retaliation. Thus, the Court holds that Jaffe's allegation of constructive termination cannot be used to support his CFRA claim.

Second, there is insufficient factual support for the allegation that Sedgwick interfered with Jaffe's right to CFRA leave. The Court is not persuaded that a partial denial of state disability insurance benefits interfered with or resulted in the denial of Jaffe taking CFRA leave. The provisions for obtaining disability benefits and for obtaining CFRA leave are separate and distinct. Cal. Code Regs., tit. 2, § 11092(b). While paid disability leave may be taken concurrently with CFRA leave, CFRA leave does not automatically entitle the employee to benefits. *Id.* Thus, although the employee would likely prefer to take CFRA leave and disability leave concurrently, a

1    denial of disability benefits in no way interferes with an employee's right to CFRA

2    leave.  Accordingly, the Court holds that the denial of Jaffe's disability benefits is not

3    sufficient to support a claim of interference with CFRA leave.

4        Thus, Jaffe has not pleaded facts sufficient to support his claim that Sedgwick

5    interfered with and failed to provide leave in violation of CFRA.  Therefore, the Court

6    **GRANTS** Sedgwick's Motion to Dismiss as to Jaffe's sixth cause of action.

7    **E.    Motion to Strike**

8        Sedgwick moves to strike all references to termination and constructive

9    termination in paragraphs 16, 28, 29, 37, 45, 60, 68, 74, and 75 of the Complaint

10   because Jaffe has failed to state a claim for constructive termination.  (Mot. 12–13.)

11   A motion to strike must involve "an insufficient defense or any redundant, immaterial,

12   impertinent, or scandalous matter."  *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d

13   970, 973 (9th Cir. 2010); *see* Fed. R. Civ. P. 12(f).  Immaterial matter "has no

14   essential or important relationship to the claim for relief or the defenses being

15   pleaded."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on*

16   *other grounds*, 510 U.S. 517 (1994).  Impertinent matter is defined as "statements that

17   do not pertain, and are not necessary, to the issues in question."  *Id.*  "With a motion to

18   strike, just as with a motion to dismiss, the court should view the pleading in the light

19   most favorable to the nonmoving party."  *Platte Anchor Bolt, Inc. v. IHI, Inc*., 352 F.

20   Supp. 2d 1048, 1057 (N.D. Cal. 2004).

21       Sedgwick's motion to strike all references to termination and constructive

22   termination is essentially moot in light of the Court's ruling on the motion to dismiss.

23   Therefore, the Court **DENIES AS MOOT** Sedgwick's motion to strike.

24                          **V.    CONCLUSION**

25       For the reasons stated above, the Court **GRANTS** Sedgwick's Motion to

26   Dismiss Plaintiffs' Complaint in its entirety and **DENIES AS MOOT** Sedgwick's

27   Motion to Strike.  The Motion to Dismiss is granted with leave to amend unless

28   otherwise noted.  Plaintiff must file an amended complaint within 14 days that cures

the deficiencies noted in this order.   Defendant's response shall be due 14 days thereafter.

**IT IS SO ORDERED.**

July 24, 2017

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**